25CA1079 Thomas v Laydon 08-06-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1079
Douglas County District Court No. 23CV30656
Honorable Robert Lung, Judge

---

Lora Thomas, in her official capacity as a Douglas County Commissioner

Plaintiff-Appellant,

v.

Abraham Jarod Laydon, in his official capacity as a Douglas County Commissioner; George Teal, in his official capacity as a Douglas County Commissioner; and the Douglas County Commissioners, a subdivision of the State of Colorado,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Moultrie and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

---

Hall, Estill, Harwick, Gable, Golden & Nelson, P.C., Joshua Kirk McGill, Zachary S. Al-Tabbaa, Greenwood Village, Colorado, for Plaintiff-Appellant

Brownstein Hyatt Farber Schreck LLP, Jason R. Dunn, Max Porteus, Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Plaintiff, Lora Thomas, in her official capacity as a Douglas County Commissioner, appeals the district court's order partially dismissing her complaint under C.R.C.P. 12(b)(5), as well as its order granting summary judgment in favor of defendants — the Douglas County Board of County Commissioners (the Board), Commissioner George Teal, and Commissioner Abraham Jarod Laydon (collectively, the BOCC). We affirm.

I. Background

¶ 2 In 2019, the Board received an anonymous letter alleging mismanagement and other problems within the county sheriff's office. Three years later — while Teal, Laydon, and Thomas were all serving as county commissioners — allegations were made that Thomas had released information contained in the letter to the public to bolster her own campaign for the office of Douglas County Sheriff. A majority of the Board ordered the county attorney to determine if Thomas had made the information public and if her release of that information had violated any state laws.

¶ 3 The county attorney's investigation eventually spawned three separate investigative reports. The first, completed by outside counsel hired by the county attorney, concluded that although

1

Thomas had divulged information from the anonymous letter in connection with her previous campaign, she had likely not violated any state laws when doing so.

¶ 4      The other two investigations were triggered by Thomas's decision to release a redacted version of outside counsel's report to the media over the other commissioners' objections.  Thomas's release of the report led to separate investigations by the county attorney and the Arapahoe County Sheriff's Office[1] into whether Thomas could be criminally charged for the release of privileged and confidential information.  The county attorney opined that "Colorado law does not specifically criminalize a knowing waiver of privilege on behalf of a privilege-holder that opposes such waiver, or a simple disclosure of a confidential document," but suggested that several criminal statutes — such as those establishing the offenses of first and second degree official misconduct — could potentially support criminal charges against Thomas.  The Arapahoe County Sheriff's Office, tasked only with considering whether there was

---

[1] The Douglas County Sheriff's Office referred its criminal investigation to the Arapahoe County Sheriff's Office, presumably to avoid a conflict of interest.

2

probable cause to support a charge of first degree official misconduct, concluded that there was not.

¶ 5    Meanwhile, shortly after Thomas learned that the county attorney had begun a criminal investigation, she hired private counsel to represent her.  She did not tell the other members of the Board that she was doing so, much less ask them to preapprove reimbursement of her attorney fees.  But after the criminal investigations were completed with no charges filed, Thomas asked the Board to reimburse her for the $5,715.00 in legal fees she had incurred.  The Board rejected Thomas's demand.

¶ 6    Thomas sued the BOCC, seeking a declaratory judgment that she was entitled to reimbursement of her legal fees either under the Colorado Governmental Immunity Act (CGIA) or, under the holding in *Wadlow v. Kanaly*, 511 P.2d 484 (Colo. 1973), as a "common law" remedy.  The BOCC moved to dismiss the complaint.  The district court ruled that Thomas's CGIA claim failed as a matter of law and dismissed it but concluded that factual questions precluded the dismissal of her common law claim.  Later, however, the court granted summary judgment to the BOCC on the common law claim

after concluding that an award of attorney fees under *Wadlow* was unmerited.

¶ 7    Thomas now appeals, contending that the district court erroneously dismissed her CGIA claim and incorrectly granted summary judgment to the BOCC on her common law claim. We disagree with Thomas's contentions and therefore affirm.

## II.    CGIA

¶ 8    Thomas contends that the district court erroneously dismissed her CGIA claim. We disagree.[2]

---

[2] Thomas asserts on appeal that the district court erred by partially granting the motion to dismiss because her complaint included a single claim for relief — a declaration that she was entitled to reimbursement of her attorney fees — that was cognizable under both the CGIA and the holding in *Wadlow v. Kanaly*, 511 P.2d 484 (Colo. 1973). Thomas's opening brief does not address preservation, *see* C.A.R. 28(a)(7)(A), and our own independent review of the record has not revealed that Thomas advanced this argument in the district court. As a general rule, we do not consider unpreserved arguments in civil cases. *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18. Nonetheless, even assuming that the argument was preserved and that partial dismissal was inappropriate under these circumstances, any error would be harmless because, as we explain below, Thomas is not entitled to relief under the CGIA as a matter of law.

4

## A. Standard of Review

¶ 9 We review de novo a district court's ruling on a motion to dismiss. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004). Likewise, we review de novo issues of statutory interpretation. *Godinez v. Williams*, 2024 CO 14, ¶ 19.

## B. Applicable Law

¶ 10 "One of the basic purposes of the CGIA is to allow a person to recover for personal injuries caused by a public entity." *Herrera v. City & County of Denver*, 221 P.3d 423, 425 (Colo. App. 2009). Thus, while "[t]he CGIA generally immunizes the government from tort liability to protect the public from unlimited liability and excessive financial burdens, [it] waives the government's immunity in certain circumstances 'to allow the common law of negligence to operate against governmental entities.'" *Id.* (citation omitted).

¶ 11 A public entity faced with a tort claim against one of its employees for acts or omissions arising out of the performance of her duties must generally assume the costs of defending that employee, pay any judgments entered against the employee, or satisfy any settlements associated with the claim. *Gray v. Univ. of Colo. Hosp. Auth.*, 2012 COA 113, ¶ 25, *overruled on other grounds*

*by*, *Cisneros v. Elder*, 2022 CO 13M, ¶ 35; § 24-10-110(1)(a)-(b), C.R.S. 2025.  A public entity is relieved of these responsibilities, however, "when the *employee's* acts or omissions were willful and wanton."  *Gray*, ¶ 26; § 24-10-110(1)(a).

¶ 12    To be willful or wanton for purposes of the CGIA, the employee must be consciously aware that her acts or omissions create danger or risk to the safety of others, and she then acts, or fails to act, without regard to the danger or risk.  *L.J. v. Carricato*, 2018 COA 3, ¶ 33 (citing *Gray*, ¶ 39).

¶ 13    An "injury" under the CGIA is defined as

> death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

§ 24-10-103(2), C.R.S. 2025.

## C.    Analysis

¶ 14    Regarding her demand for fee reimbursement under the CGIA, Thomas's complaint alleged that, after the investigations described above "cleared her of any wrongdoing," she submitted a letter to the county manager "formally request[ing] reimbursement of her legal fees."  At a public meeting during which the Board considered

6

Thomas's request, the acting county attorney "advised the Commissioners . . . that the [CGIA] *required* them to pay [Thomas's] legal fees for defending against the investigations unless the Commissioners could prove that [Thomas's] conduct was not only illegal, but willfully and wantonly illegal." Upon receiving this advice, Laydon and Teal declared "that [Thomas's] conduct was willfully and wantonly illegal, and refused to authorize payment of the fees." This declaration, Thomas alleged, "violate[d]" the CGIA because the various investigations against her had not established that she had violated any law, much less that she had done so willfully and wantonly.

¶ 15 The BOCC moved to dismiss Thomas's CGIA claim in the district court, arguing that section 24-10-110(1)(a), which generally requires a public entity to assume the costs of defense for any of its employees who is subjected to a lawsuit as a result of the employee's official duties, applies only when a plaintiff has brought a tort claim against a public employee acting within the scope of her employment. Because neither Thomas nor the county was sued for a tort in connection with the anonymous letter or the various

investigations associated with it, the BOCC argued that the CGIA's indemnification provisions did not apply.

¶ 16     The district court agreed with the BOCC.  Observing that the CGIA only requires a public entity to pay for the costs of an employee's defense "when the claimant seeks redress from injuries that result from tortious conduct," *City & County of Denver v. Blatnik*, 32 P.3d 593, 596 (Colo. App. 2001), the court concluded that Thomas had not alleged that the fees she incurred were caused by "a claim arising out of an injury as defined by the CGIA."

¶ 17     We reach the same conclusion.  While the CGIA obliges a public entity to pay for the legal defense of an employee who is sued for a tort committed within the scope of his or her employment, Thomas was never in that situation.  Indeed, until Thomas filed her complaint seeking a declaratory judgment, neither she nor the BOCC was ever haled into court at all.  Even assuming that Thomas adequately pleaded that the fees she incurred were the result of an "injury," the CGIA does not authorize indemnification of fees in the absence of a "claim."

¶ 18     We find support for this conclusion in the analogous circumstances of the plaintiffs in *Blatnik*.  In that case, a division of

this court considered whether two police officers were owed more than $100,000 in attorney fees and costs under the CGIA and the Liability of Peace Officers Act after they footed the bill for their own defense in a civil dispute over the officers' participation in an internal investigation. *Blatnik*, 32 P.3d at 595. After prevailing in the civil case, the officers requested an award of their attorney fees under the indemnity provisions of the CGIA. The district court granted the request but the division reversed, holding that the indemnity provision of the CGIA did not extend to the officers' circumstances. *Id.* at 596. Examining the CGIA's definition of "injury," § 24-10-103(2), along with its "Declaration of policy," the division concluded that the CGIA was intended to apply only to tortious conduct. *Blatnik*, 32 P.3d at 595-96 (referencing § 24-10-103(2)). Because the civil dispute between the officers and the city was neither tortious conduct nor an "injury" as defined by the CGIA, the CGIA's indemnification provisions did not apply.

¶ 19    Here, as in *Blatnik,* the various Board-triggered investigations did not amount to an "injury" for the purposes of the CGIA. Thus, dismissal of Thomas's CGIA claim was warranted because she failed to plead that she (or anyone else) had committed a tort, that the

county attorney's investigations stemmed from any allegation of "injury" under the CGIA, or that anyone had made a claim against her or the county. At most, the "claim" Thomas asserts was made against her was that she committed criminal misconduct through the act of releasing purportedly confidential information to the media and the public. However, Thomas also maintains that she was exonerated and that the results of the various investigations show that she never exceeded the lawful exercise of her power as a commissioner.

¶ 20 To trigger relief under the CGIA, a claimant must suffer an injury that "lie[s] in tort or could lie in tort." §§ 24-10-105(1), -108, C.R.S. 2025. Because Thomas did not allege that anyone suffered an injury or filed a tort claim against her that might require indemnification, the district court correctly dismissed her claim for a declaratory judgment seeking reimbursement for her attorney fees under the CGIA.

### III. "Common Law" Claim

¶ 21 Relying on the Colorado Supreme Court's holding in *Wadlow*, along with a more recent unpublished and explicitly nonprecedential Colorado Supreme Court order, Thomas contends

that she is entitled to the recovery of her attorney fees as a common law remedy because her complaint satisfied the elements of a "*Wadlow* claim," which she describes as follows: (1) the existence of a dispute; (2) between a board of county commissioners and an independently elected constitutional officer; (3) regarding the respective powers of the board of county commissioners and the constitutional officer's office; (4) in which the county attorney represents the commissioners at public expense; and (5) the dispute is not related to fiscal issues such as budget, pay, or staffing. Thomas maintains that the Colorado Supreme Court's approval of fee-shifting in cases where these elements are met, including in *Wadlow*, is intended to stand as a bulwark against "predatory" behavior — such as when a board majority attempts to force another elected official to cede powers through "[financially] ruinous persecution." We are not persuaded, however, either by Thomas's attempt to reframe the elements of a "*Wadlow* claim" or that the holding of *Wadlow* extends to the circumstances of this case.

## A.    C.A.R. 21(o)

¶ 22    Before considering the merits of Thomas's common law claim, we first address her reliance on *Adams County v. Culpepper*, No.

11

22SA256, 2022 WL 6677199 (Colo. Oct. 10, 2022), an unpublished order issued by the Colorado Supreme Court under C.A.R. 21(o). C.A.R. 21(o) provides in pertinent part that "[o]rders issued without an opinion will not be designated for official publication by the court and will remain unpublished. Unpublished orders may not be cited as precedent." When the supreme court chose to resolve *Adams County* via an unpublished order, it highlighted the nonprecedential nature of its decision, pointing out that "the issues raised by the petition are not amenable to providing broadly applicable guidance as to governing legal principles" and "emphasizing that the court's ruling is limited to the specific circumstances presented here." *Adams County*, 2022 WL 6677199, at *1.

¶ 23    Despite the supreme court's admonition in *Adams County* and C.A.R. 21(o)'s unequivocal bar on the precedential use of unpublished Rule 21 orders, the centerpiece of Thomas's argument on appeal is that the district court erred by "ignor[ing] the Supreme

Court's holding in *Adams County*."[3] Indeed, fully one-third of the opening brief is devoted to "harmonizing" *Wadlow* and the published cases that subsequently narrowed it with the ostensibly broader *Adams County* "holding." We decline to resolve these arguments because C.A.R. 21(o) explicitly forbids us from treating the supreme court's unpublished order in *Adams County* as precedential and instead consider only whether the district court correctly granted summary judgment in the BOCC's favor in light of *Wadlow* and its progeny.

## B. Standard of Review

¶ 24  We review a district court's grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation*

---

[3] At oral argument, Thomas's counsel insisted that he had not cited *Adams County v. Culpepper*, No. 22SA256, 2022 WL 6677199 (Colo. Oct. 10, 2022) (unpublished order), as a "precedential" decision, but had instead only relied on the supreme court's unpublished order for its "persuasive" value. Even if we agreed with this characterization of Thomas's argument — and we do not — we would decline to adopt such a narrow reading of C.A.R. 21(o), which, in our view, flatly prohibits the use of an unpublished C.A.R. 21 order either as binding precedent or as persuasive authority. *See* Black's Law Dictionary 1424 (12th ed. 2024) (defining "precedent" as "[a]n action or official decision that can be used as support for later actions or decisions; esp., a decided case that furnishes a basis for determining later cases involving similar facts or issues").

13

*Bd.*, 901 P.2d 1251 (Colo. 1995). Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002); C.R.C.P. 56(c). The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini*, 42 P.3d at 632.

### C.    *Wadlow*

¶ 25    In *Wadlow*, the Colorado Supreme Court took up a dispute between a county treasurer and a county board of commissioners concerning which entity had the power to set the treasurer's staff salaries. 511 P.2d at 485. The treasurer, acting in his official capacity, personally hired an attorney to file an action seeking a writ of mandamus and a declaratory judgment "interpreting the relative rights and duties of the Treasurer and the Board" under the governing statutes. *Id.* The county commissioners, represented by the county attorney at the public's expense, defended against the lawsuit. *Id.* at 487. After addressing the merits of the dispute, the

14

supreme court, like the court of appeals had done before it, *see Kanaly v. Wadlow*, 502 P.2d 83, 86 (Colo. App. 1972), determined that the county commissioners should reimburse the treasurer for the attorney fees he had personally incurred. As the supreme court put it, "when the question of the respective powers of two governmental bodies is at issue, it would be inequitable to require one official, acting in his official capacity, to personally bear the burden of attorneys' fees and costs generated in the suit." *Wadlow*, 511 P.2d at 487.

¶ 26    In the ensuing decades, public officials embroiled in intra-governmental litigation regarding the powers of their offices have regularly invoked *Wadlow* as a basis for requesting an award of attorney fees. Colorado's appellate courts, however, have interpreted *Wadlow* narrowly and have repeatedly declined to authorize fee-shifting in the absence of statutory authorization. *See Tisdel v. Bd. of Cnty. Comm'rs*, 621 P.2d 1357, 1359-62 (Colo. 1980) (declining to award attorney fees to district attorney who obtained a declaratory judgment entitling him to higher salary because there was "no statutory authority for the payment of attorneys' fees"); *Sullivan v. Bd. of Cnty. Comm'rs*, 692 P.2d 1106, 1110 (Colo. 1984)

15

(declining to award attorney fees to county sheriff in dispute between sheriff and board of county commissioners because "there [was] no statutory authority for the payment of attorney's fees"); *Johnson v. Bd. of Cnty. Comm'rs*, 676 P.2d 1263, 1264 (Colo. App. 1984) (relying on *Tisdel* and *Wadlow* to reject a request for attorney fees in a dispute regarding compensation between a county sheriff and board of county commissioners because there was no statutory authority for such an award).

¶ 27     Considering these cases together, we glean several generally applicable principles.  First, contrary to Thomas's argument on appeal, *Wadlow* did not create a common law remedy entitling elected officials to fee reimbursement under certain circumstances. To the contrary, notwithstanding the apparent breadth of *Wadlow*'s language, subsequent cases have consistently declined to award fees in the absence of explicit statutory authorization.  *See Tisdel*, 621 P.2d at 1359-62; *Sullivan*, 692 P.2d at 1110; *Johnson*, 676 P.2d at 1264.  Second, the parties do not cite, and we have not found, a single case in which a trial or appellate court even considered — much less granted — an award of fees under *Wadlow* outside the context of an existing lawsuit.  *See, e.g.*, *Wadlow*, 511 P.2d at 487

16

("The present suit involved litigation between two public entities."); *Tisdel*, 621 P.2d at 1362 ("[I]f litigation relating to compensation or classification is instituted by one of the enumerated elected officials, the costs of any litigation shall be paid out of the county general fund."). Third, nothing in *Wadlow* or the subsequent cases that apply it suggests that its rule applies beyond the context of official capacity civil litigation regarding the scope of the powers and duties of elected officials. *Wadlow*, 511 P.2d at 487 (awarding fees where the dispute involved the "respective powers of two governmental bodies").

¶ 28    Thomas's lawsuit meets none of these criteria. First, she not only fails to identify any statute that would support her request for fees, but she also appears to affirmatively disclaim any such statutory support by characterizing *Wadlow* as establishing a "common law" remedy. Second, the investigations concerning Thomas's conduct never resulted in court proceedings. And third, to the extent that the investigations were criminal in nature — and that is how Thomas describes them on appeal — we struggle to discern how they could involve her "official capacity." *Cf. People v. Peters*, 2026 COA 24, ¶¶ 53-64, 113 (rejecting defendant's assertion

that the jury should have been instructed on the statutory affirmative defense of execution of a public duty where the charged actions "were not taken in pursuit of that duty").

¶ 29　Because Thomas did not satisfy any of the criteria for fee reimbursement outlined in *Wadlow* and its progeny, we conclude that the district court correctly rejected her "common law" claim as a matter of law.

## IV.　Attorney Fees

¶ 30　Finally, the BOCC requests an award of appellate attorney fees because Thomas's appeal lacks substantial justification. *See* § 13-17-102(2), C.R.S. 2025.　We deny the request.

¶ 31　Under section 13-17-102(2), a court "shall award" reasonable attorney fees "against any attorney or party who has brought . . . a civil action, either in whole or in part, that the court determines lacked substantial justification."　An action lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious."　§ 13-17-101.5(1), C.R.S. 2025.

¶ 32　A claim is frivolous if no rational argument based on evidence or law is presented, and a claim is groundless if it is not supported

by credible evidence. *Schmidt Constr. Co. v. Becker-Johnson Corp.*, 817 P.2d 625, 627 (Colo. App. 1991). A vexatious claim or defense is one brought or maintained in bad faith. *Black v. Black*, 2020 COA 64M, ¶ 133.

¶ 33 While Thomas has not prevailed in this appeal, we cannot say that her arguments are substantially frivolous, groundless, or vexatious. "Meritorious actions that prove unsuccessful and good faith attempts to extend, modify, or reverse existing law are not frivolous." *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005). We therefore decline the BOCC's request for an award of appellate attorney fees.

## V. Disposition

¶ 34 We affirm the district court's order dismissing Thomas's CGIA claim and its order granting summary judgment to the BOCC and denying Thomas's motion for summary judgment.

JUDGE MOULTRIE and JUDGE BERNARD concur.